UNITED STATES DISTRICT Court

NORTHERN DISTRICT OF CALIFORNIA

STEVEN DEAN PARKS,

    Plaintiff,

    v.

E. McEVOY,

    Defendant.

No. C-12-5094 EMC (pr)

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

This is a *pro se* prisoner's civil rights action under 42 U.S.C. § 1983 in which Steven Dean Parks claims that E. McEvoy violated his Eighth Amendment rights by causing two of her inmate-clerks to attack him. Ms. McEvoy has moved for summary judgment and Mr. Parks has opposed the motion. For the reasons discussed below, the Court will grant Ms. McEvoy's motion for summary judgment.

## II. BACKGROUND

The following facts are undisputed unless otherwise noted:

The events in question took place in November and December 2011 at San Quentin State Prison. Mr. Parks was an inmate at San Quentin serving a life sentence. Ms. McEvoy was an office technician who handled payroll and other administrative tasks in San Quentin's plant operations department. Although several inmates worked on the floor below her, Ms. McEvoy rarely spoke to them.

Ms. McEvoy wrote a CDC-115 rules violation report charging Mr. Parks with being "out of bounds." The description of the circumstances of the offense in the CDC-115 stated:

> On Wednesday, November 30, 2011, at approximately 0830 hours, Inmate PARKS, 1-W-43L, entered the Maintenance Vocational Office Area which is clearly marked "Out of Bounds" on the floor and on the door. He entered into the office area and asked two inmate clerks, MILLER, E-63770 and MONTGOMERY, E03016 for a copy of a work order that was submitted. He tried to manipulate the inmates assigned to this area prior to attempting to get the information from staff. The inmates told I/M PARKS they would not give him a copy. He then came into my office and stated he wanted a copy of the work order. I explained to the inmate I was not authorized to release that document to him. I was not a supervisor. This inmate walked through an Out of Bounds area without permission from his supervisor or any free staff in this area. I phone[d] Correctional Officer Stevenson and explained to him what had occurred. Officer Stevenson promptly responded to the situation and dealt with the inmate. Inmate PARKS is aware that this 115 is forth coming.

Docket # 18-2 at 4. At a hearing held on January 7, 2012, Mr. Parks was found guilty. *Id.* at 5-6. The discipline imposed was that Mr. Parks "was counseled and reprimanded," and "assessed 40 hours of extra duty to be completed by 3/07/2012." *Id.* at 6. The disciplinary decision later was set aside because of defects in the paperwork by the hearing officer. *See* Docket # 8 at 7.

Mr. Parks was attacked in his cell by five inmates on or about December 1, 2011.[1] Two of the attacking inmates (i.e., Miller and Montgomery) worked as clerks for Ms. McEvoy. They were aided by three of their inmate friends (i.e., Red, Black and Homeboy). They beat up Mr. Parks severely, but he did not seek or receive medical care because they told him they would harm him and/or his family if he said anything about the incident. When they left, "there was a warped (sic) up note on paper that said E. McVoy had sent this message to plaintiff." Docket # 8 at 3; *see id.* at 4.

---

[1] Ms. McEvoy questions whether this attack occurred at all, and suggests that the attack may have been a delusion. She notes that Mr. Parks' medical records make no mention of the injuries Mr. Parks claims to have suffered during the attack, and that Mr. Parks had significant mental health problems and was being treated at the time for, among other things, a continuing significant delusional disorder. As this is a motion for summary judgment, the Court accepts as true the non-movant's version of the facts. Thus, the Court decides the motion on the assumption that the attack by the inmates did occur.

2

1   Mr. Parks has contended in this action that Ms. McEvoy caused inmates Miller and
2 Montgomery to attack him, although his many descriptions of the events have been vague on the
3 critical point of how she did so. Mr. Parks' most lucid explanation of his theory is found in a
4 declaration he filed in which he stated:

> Plaintiff declares and contends that that (2) two inmates named Miller and Montgomery also named on a false 115 by E. McEvoy on or about December 5, 2011 on or about 2:30 p.m. the inmates Miller and Montgomery went and got (3) three of their fellas red, black, and homeboy came to my cell . . . [and] assaulted the plaintiff and left him with injuries and threats.
>
> Plaintiff declares and contends that defendant E. McVoy had put the willfulness of this of this attack my life in danger and my families life in danger by putting the (2) two inmates named Miller and Montgomery on a false RVR 115, creating a hostile prison environment with E. McVoys name on the wrapped up paper left after the slaying, beating, threats, on plaintiff person.
>
> Plaintiff declares and contends that the defendant E. McVoy used this act of untrue (false) 115 rules violation report (RVR) to start a very dangerous situation that left the plaintiff for dead and in total fear for his and his families life.

15 Docket # 9 at 3 (errors in source).

16   Mr. Parks has stated repeatedly that it was by writing the CDC-115 that Ms. McEvoy put his
17 life in danger, although he has never explained why writing that CDC-115 put him in danger. *See,*
18 *e.g.,* Docket # 8 at 3 ("McVoy wrote a RVR 115 disciplinary report guaranteeing the two (2)
19 inmates was going to take action in a assault on the plaintiff making it equal results for all"); Docket
20 # 1 at 12 ("the terror and threats against my family because of Miss E. McEvoy['s] actions and
21 signature testimonial document that was deliberate done by E. McEvoy"); Docket # 1 at 14
22 (directing reader to page 3 of Exhibit A (i.e., the CDC-115) as proof that McEvoy urged the inmates
23 to engage in acts of violence); Docket # 1 at 12 (urging that McEvoy's signature on the CDC-115
24 "admit[ted] falsification, putting the plaintiff['s] life in direct[] danger"); Docket # 6 at 3 (McEvoy
25 "truly put my life in danger with two (2) inmates said in her false statements in that 115 (RVR)
26 disciplinary"); Docket # 6-1 at 1 ("[R]etaliation of my life in danger from the two (2) inmates that
27 the defend[a]nt had full knowledge of doing because she listed their names in full on the 115 (RVR)
28 disciplinary document"); Docket # 1 at 15 ("Two African Americans in racism tension with a white

3

American that Miss E. McEvoy instigated intentionally the split second they both saw their names on a document that she was telling a lie about.  It flared up outburst of emotion so Miss E. McEvoy was the intentional instigat[o]r with her signature on the document rules violation report 115.")  Mr. Parks has stated in his second amended complaint that he is filing suit against Ms. McEvoy "for putting plaintiff life in danger by telling two (2) inmates to injure plaintiff," Docket # 8 at 1, although he has not stated how he knew that she told them to do so.

### III.  LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The Court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (a fact is material if it might affect the outcome of the suit under governing law, and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.")  The moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact.  The burden then shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (citations omitted.)  The Court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv. Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party.  *See id.* at 631.

A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. *See Schroeder v.*

*McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge). Here, Mr. Parks' complaint, first amended complaint and second amended complaint were made under penalty of perjury and therefore are considered as evidence.

## IV. DISCUSSION

The Eighth Amendment prohibits cruel and unusual punishment. The Eighth Amendment may be violated both by the use of force or by deliberate indifference to a risk to an inmate's health or safety. Mr. Parks' complaint, amended complaint, and second amended complaint were all quite unclear on what occurred and what his theory of liability was for Ms. McEvoy. In the order of service, the Court noted the problem, liberally construed the second amended complaint to mean that Ms. McEvoy told or otherwise caused the inmates to attack Mr. Parks, and stated that the particular theory of liability (i.e., deliberate indifference to safety or excessive force) would depend on the facts that were developed in the litigation. *See* Docket # 10 at 2-3 & n.1. The facts were never further developed by Mr. Parks. The Court thus considers whether there is a triable issue on the Eighth Amendment claim under either theory.

The Eighth Amendment's prohibition of cruel and unusual punishment requires that prison officials take reasonable measures for the safety of inmates, including protecting inmates from violence at the hands of other inmates. *See Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994). A prison official violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious, and (2) the official is, subjectively, deliberately indifferent to the inmate's safety. *See id.* at 834. To be liable in a failure to prevent harm situation, the official must know of and disregard an excessive risk to inmate safety. *See id.* at 837. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and she must also draw the inference. *See id.* She need not "'believe to a moral certainty that one inmate intends to attack another at a given place at a time certain before [she] is obligated to take steps to prevent such an assault.'" *Berg v. Kincheloe*, 794

1  F.2d 457, 459 (9th Cir. 1986) (citation omitted).  Before being required to take action she must,
2  however, have more than a "mere suspicion" that an attack will occur.  *Id.; see, e.g., id.* at 460
3  (summary judgment appropriate as to defendants when plaintiff "failed to come forward with facts
4  showing that these defendants had any reason to believe he would be attacked by the assailant").

5      Mr. Parks has failed to show a triable issue of fact in support of his Eighth Amendment claim
6  under a deliberate indifference to safety theory.  He has failed to present any evidence suggesting
7  that writing a CDC-115 created a substantial risk of serious harm to his safety.  The mere writing of
8  a CDC-115 generally does not endanger the inmate to whom it refers, and Mr. Parks has not
9  identified anything in this particular CDC-115 that put him in any danger.  The CDC-115 stated that
10 Mr. Parks was out of bounds and had asked other inmates for a work order.  The CDC-115 did not,
11 for example, identify Mr. Parks as an informant or state that he had accused inmates Miller and
12 Montgomery of anything, such that seeing the document might prompt inmates Miller and
13 Montgomery to attack him.  Although Mr. Parks has urged that the attack by the two inmates was
14 inevitable once they saw the CDC-115 – e.g., he urges that writing the CDC-115 was "guaranteeing"
15 the two inmates would assault him, Docket # 8 at 3, and that the inmates were put in tension with
16 him "the split second they both saw their names" on the CDC-115, Docket # 8 at 3 – the chronology
17 of events contradicts his theory that the CDC-115 prompted the attack:  Mr. Parks has stated the
18 attack occurred on December 1, which meant the attack would have occurred before the CDC-115
19 was signed by Ms. McEvoy on December 2, and before the CDC-115 was delivered to Mr. Parks on
20 December 8.  *Cf. Scott v. Harris*, 550 U.S. 372, 380-83 (2007) ("When opposing parties tell two
21 different stories, one of which is blatantly contradicted by the record, so that no reasonable jury
22 could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion
23 for summary judgment.")  Viewing the evidence and reasonable inferences therefrom in the light
24 most favorable to the nonmovant, no reasonable jury could conclude that the CDC-115 created a
25 substantial risk of serious harm to Mr. Parks.  His claim fails on the objective prong of the Eighth
26 Amendment analysis.

27     Even if writing the CDC-115 did create a substantial risk of harm to Mr. Parks, there is no
28 evidence that Ms. McEvoy knew that writing the CDC-115 would create any danger for Mr. Parks.

Thus, the Eighth Amendment claim also fails on the mental state prong, i.e., there was no evidence that would allow a jury to conclude that Ms. McEvoy acted with deliberate indifference to Mr. Parks' safety. No reasonable jury could find in Mr. Parks' favor on the evidence in the record.

Mr. Parks has stated that he is suing Ms. McEvoy "for putting plaintiff life in danger by telling two (2) inmates to injure plaintiff." Docket # 8 at 1. This statement does not raise a triable issue because Mr. Parks has provided no information about the basis of this statement. He does not suggest that he has personal knowledge that Ms. McEvoy ever made such a statement. Nor does he submit even hearsay evidence of such a statement. An opposing declaration – which the verified amended complaint qualifies as, *see Schroeder*, 55 F.3d at 460 – must "be made on personal knowledge, set forth facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Here, Mr. Parks declared "under penalty of perjury" that the statements in his amended complaint were "true and correct to the best of [his] knowledge," Docket # 8 at 5, but does not state the basis for his knowledge. Like a declaration made on information and belief, this conclusory sort of statement unaccompanied with any details as to the basis for it does not suffice to defeat the motion for summary judgment. The absence of any elaboration on the statement about Ms. McEvoy "telling" the inmates to injure him is particularly glaring in light of the fact that the Court specifically mentioned that the allegation was vague and had to construe it liberally to find that a cognizable claim was stated. It is particularly noteworthy that there does not appear to be a logical reason why Ms. McEvoy would be motivated to target Mr. Parks. There is no evidence of any prior animosity or even any relationship between them.

Mr. Parks' statement that he found a wrapped up note that said Ms. McEvoy had sent this message to him also does not raise a triable issue of fact because he provides no evidence that she was responsible for the note and that it pertained to the attack on Mr. Parks. *Cf. Schroeder*, 55 F.3d at 460 & n.12 (prisoner-plaintiff's complaint sufficed as an opposing declaration made on personal knowledge because he stated that prison officials made allegedly retaliatory statements *to him*). Moreover, Mr. Parks did not submit the note as part of his evidentiary submission. At trial, the best evidence rule would preclude Mr. Parks from relying on his bare statement that he found a wrapped

up note "that said E. McVoy had sent this message to plaintiff" or "that said defendant E. McVoy orchestrated this assault," Docket # 8 at 3-4, to prove that Ms. McEvoy directed the two inmates to attack Mr. Parks. The best evidence rule states that "[a]n original writing . . . is required in order to prove its content unless these rules or a federal statute provides otherwise." Fed. R. Evid. 1002. Mr. Parks is attempting to rely on the contents or terms of the document to prove that Ms. McEvoy directed the two inmates to attack him. He has not, however, produced the note and has not explained why he has not produced that note. Although Rule 56 permits evidence in a form itself not admissible so long as the "contents could be presented in an admissible form at trial," *Fraser v. Goodale*, 342 F.3d 1032, 1037 (9th Cir. 2013), it appears that, absent the note, its contents could not be presented in an admissible form at trial.

Finally, Mr. Parks' unsubstantiated allegations (without a copy of the actual note) about the wrapped note, viewed in the entire context of the events described in the complaint, is the sort of "speculation, conjecture, or fantasy" that will not preclude summary judgment. *Moody v. St. Charles County*, 23 F.3d 1410, 1412 (8th Cir. 1994) (quoting *Gregory v. Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992)).

Mr. Parks' claim fares no better if his theory is that Ms. McEvoy should be liable under an excessive force theory for specifically directing the inmates to act as her instrumentalities to beat him up. *See generally Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (Eighth Amendment's prohibition of cruel and unusual punishments protects an inmate from force used maliciously and sadistically for the very purpose of causing harm); *cf. Miller v. Clark County*, 340 F.3d 959, 961-63 (9th Cir. 2003) (analyzing K-9 dog handler's liability for excessive force based on K-9 dog's actions). As explained in the preceding paragraphs, Mr. Parks fails to show a triable issue of fact that Ms. McEvoy actually told the other inmates to assault Mr. Parks, and the CDC-115 itself cannot reasonably be read to command the other inmates to assault Mr. Parks. Viewing the evidence and inferences therefore in the light most favorable to Mr. Parks, no reasonable jury could find that Ms. McEvoy used excessive force on him.

When the evidence is viewed in the light most favorable to Mr. Parks, and inferences therefrom drawn in his favor, no reasonable jury could return a verdict for him and against Ms.

McEvoy. Ms. McEvoy therefore is entitled to judgment as a matter of law on the Eighth Amendment claim.

Ms. McEvoy also is entitled to qualified immunity against Mr. Parks' claim. The defense of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether an official is entitled to qualified immunity, the Court must decide whether the facts alleged show the official's conduct violated a constitutional right; and, if so, whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001); *see also Pearson v. Callahan*, 555 U.S. 223 (2009) (overruling *Saucier*'s requirement that qualified immunity analysis proceed in a particular sequence). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201. The Court has concluded that the evidence fails to show a violation of Mr. Parks' Eighth Amendment rights. Therefore, Ms. McEvoy prevails on the first prong of the *Saucier* test. As a matter of law, she is entitled to qualified immunity against Mr. Parks' claims.

## V.   CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED. (Docket # 18.). Judgment will now be entered in Defendant's favor and against Plaintiff.

IT IS SO ORDERED.

Dated: February 2, 2015

_____
EDWARD M. CHEN
United States District Judge